United States District Court
Southern District of Texas
**ENTERED**
March 25, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILLIP BAILEY, (TDCJ-CID #1619414) Plaintiff, | § § § § | |
| vs. | § § | CIVIL ACTION H-15-3437 |
| DR. BOBBY VINCENT, *et al.,* Defendants. | § § § § | |

**MEMORANDUM AND OPINION**

Phillip Bailey, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in November 2015, alleging civil rights violations resulting from a denial of medical care. Bailey, proceeding pro se and in forma pauperis, sues Dr. Bobby Vincent and John Doe, a pharmacist.

The threshold issue is whether Bailey's claims should be dismissed as frivolous. The court concludes that Bailey's claims lack merit and should be dismissed for the reasons stated below.

**I.    Procedural History and Background**

On December 29, 2014, Bailey originally filed his suit in the Eastern District of Texas, Tyler Division, Civil Action Number 6:14-0991. Bailey is confined at the Pack I Unit, and he was previously confined at the Polunsky Unit. Proceeding *pro se* and *in forma pauperis,* Bailey filed this civil rights lawsuit under 42 U.S.C. § 1983, naming nine defendants. Bailey was injured when a prison bus in which he was being transported collided with another vehicle. Bailey alleges that certain defendants were deliberately indifferent in causing the bus accident, and the remaining defendants have been deliberately indifferent to his serious medical needs and in denying him proper

pain medication.

The first four defendants, Lucas Alviar, Jackie Elms, Charles Prevost, and Herbie Alcaraz, are TDCJ bus drivers. The bus accident occurred in Livingston, Texas, in Polk County. The next three defendants-- Dr. Marissa Lanuza, Dr. Daniel V. Nguyen, and Mr. J. Keller, practice manager for UTMB-CMC-- are located in the Polunsky Unit of TDJC in Polk County, Texas. Bailey's claims of deliberate indifference in causing the bus accident and to his medical needs against these defendants arise out of actions that occurred in the Polunsky Unit in Polk County, which is located in the Eastern District of Texas, Lufkin Division. Two of the defendants, #8-- Dr. Vincent and #9--- an Unknown Pharmacist, are listed at the Estelle Unit in Huntsville. Bailey's claims of deliberate indifference to his medical needs against these two defendants arise out of actions that occurred in Huntsville, Walker County, Texas. That lies within the Houston Division of the Southern District of Texas.

On November 20, 2015, the Tyler Division Court severed and transferred Bailey's claims against Dr. Vincent and "unknown pharmacist" to the Southern District of Texas, Houston Division, and the remaining defendants, Lucas Alviar, Jackie Elms, Charles Prevost, Herbie Alcaraz, Dr. Marissa Lanuza, Dr. Daniel V. Nguyen, and Mr. J. Keller, were transferred to the Lufkin Division. (Docket Entry No. 26).

## II.  Bailey's Allegations

On January 4, 2013, Bailey was being transferred from the Byrd Unit to the Polunsky Unit following a medical appointment. He was chained in handcuffs to Offender Kevin Goodrich. Defendant Lucas Alviar was driving the bus into Livingston, Texas at approximately 7:02 A.M., when he struck a truck that was stopped at a red light. Defendant Alviar slammed on the air brakes,

throwing Bailey into the seat in front of him. Bailey sustained severe back and neck injuries when he fell to the floor of the bus. Bailey states that he suffered from January 4, 2013 until March 30, 2014 with excruciating extreme pain in the neck and shoulder.

On January 8, 2013, Dr. Marissa Lanuza, Medical Director of the Polunsky Unit, said, "There is nothing wrong with you; you just worry too much." She said, "You have been taking Ibuprofen too long, but keep taking it and I will order you some Neurontin for pain from the pharmacy in Huntsville." Dr. Lanuza told Bailey that she was not going to order an MRI because it cost $1,000, and she was not going to spend that much money when there was nothing wrong with Bailey. When Bailey saw Dr. Lanuza again, she said there would be no MRI, no pain medication, and that there was nothing wrong with Bailey. Bailey saw Dr. Lanuza again with Doctor Vincent in her office, who is the Medical Director at the Estelle Unit. Dr. Vincent said he would not give Bailey an MRI because it cost too much, and he would not give Bailey any pain medication that was non-narcotic because he was drug-seeking, that there was nothing wrong with Bailey, and that he was not in much pain. He also refused to provide Bailey with medical boots, knowing Bailey needed them, and he continued to say Bailey was drug-seeking. Bailey saw Dr. Daniel Nguyen, who told Bailey that an MRI cost too much money and there was nothing wrong with Bailey. Dr. Nguyen stated that Bailey did not need Ibuprofen but that he would give it to Bailey.

Bailey complains that a pharmacist denied him Neurontin for pain and that he took Ibuprofen daily for over three years. As a result, he claims that he has ongoing stomach problems. Bailey alleges that Dr. Vincent was fully aware that Bailey was in a bus wreck and was severely injured. Doctor Vincent was reckless and deliberately indifferent to Bailey's serious medical needs with injuries by denying him an MRI or non-narcotic pain medication. The unknown pharmacist has

denied Bailey pain medication for his injuries after doctors had placed the orders. Bailey has suffered with extreme, excruciating pain because of this cruel and unusual punishment. Bailey went to Hospital Galveston on March 1, 2013 to get a stint placed in his left leg. While the surgeon, Al Zoubaidi, M.D., was putting the stint in Bailey's leg, Bailey told the surgeon about the bus wreck and his continuing pain. The vascular surgeon told Bailey that he would make him an appointment with the spine specialist so he could receive some help for his severe injuries. Bailey saw the neurosurgeon on May 15, 2013, five months after the bus accident. The neurosurgeon ordered an MRI lumbar spine without contrast, MRI cervical spine without contrast, and electromyography (E.M.G.). Bailey received a cervical spine MRI on September 4, 2013, an electromyography on September 16, 2013, and an MRI on his lumbar spine on November 19, 2013. On February 6, 2014, Bailey had neck surgery to repair the damage done by Lucas Alviar and the other defendants' recklessness and deliberate indifference to Bailey's health and safety. On June 3, 2014, Bailey had back surgery.

Bailey seeks a declaratory judgment stating that the defendants violated his civil rights. He seeks an injunction compelling the defendants to provide him with pain medications. He further seeks compensatory damages of $100,000.00; and punitive damages of $100,000.00.

### III. The Administrative Record

On November 12, 2015, the United States District Court for the Eastern District of Texas, Tyler Division ordered the Office of the Attorney General, as *amicus curiae*, to file a *Martinez* Report. (Docket Entry No. 24). On February 11, 2016, the Office of the Attorney General filed this report regarding Bailey's claims against Correctional Officers Lucas Alviar, Jackie Elms, Charles Prevost, and Herbie Alcaraz, all employed by TDCJ, as well as Dr. Marisa Lanuza, Dr. Daniel

Nguyen, Dr. Bobby Vincent, J. Keller, and "unknown pharmacist," all employed by UTMB. Because Bailey's claims against Dr. Vincent and the "unknown pharmacist" arose as part of the same incident while Bailey was incarcerated at the Polunsky Unit in Polk County, Texas, the Attorney General's Office addressed Bailey's claims against them as well. The Attorney General's Office has filed a copy of this report in this court. (Docket Entry No. 35).

"Expansion of the record protects the unskilled litigant and enables the court to make an informed decision regarding the merits of an action by reference to the reality of the situation rather than by speculating as to the nature of the claim." *Cay v. Estelle*, 789 F.2d 318, 324 (5th Cir. 1986)(quoting *Anderson v. Coughlin*, 700 F.2d 37, 41 (2nd Cir. 1983)).

In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit approved a district court's order that prison officials investigate the facts surrounding a civil rights suit by inmates to construct "an administrative record . . . to enable the trial court to . . . make a determination [of frivolity] under section 1915(a)." *Id.* at 319. The trial court had required the defendants to attach all relevant reports to their answers. *See also Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975) (alluding to use of a "special report" filed by prison officials in response to prisoner's claim). Use of the *Martinez* Report has been approved by the Fifth Circuit in *Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986) and *Parker v. Carpenter*, 978 F.2d 190, 191 n.2 (5th Cir. 1992).

The Attorney General's Office submitted the following records:

(A)  Affidavit of Steven Bowers, M.D., explaining Plaintiff's medical care (Bates stamped BAILEY – BOWERS – 1-6)

(B)  Relevant portions of Bailey's UTMB Medical Records, with supporting business records affidavit (Bates stamped BAILEY – MEDICAL – 1-32)

(C) Relevant portions of Bailey's Grievances, with supporting business records affidavit (Bates stamped BAILEY – GRIEVANCES – 1-351)

(D) Emergency Action Center Report, with supporting business records affidavit (Bates stamped BAILEY – EAC – 1-105)

Dr. Bowers submitted an affidavit in which he reviewed Bailey's medical care. He testified as follows:

> My name is Steven Bowers, M.D. I am over the age of 18 years, competent to make this affidavit and have personal knowledge of the facts herein stated. I earned my Doctor of Medicine in 1973 from the University of Texas Southwestern Medical School. I am licensed as a medical doctor by the Texas Medical Board. I am currently the Legal Coordinator for The University of Texas Medical Branch Correctional Managed Care (UTMB/CMC). In the last four years I have not testified as an expert at trial or by deposition. I have been with UTMB/CMC since December 1, 2002.
> I am making this affidavit in connection with Civil Action No. 6:14cv991; *Phillip Bailey, #1619414 v. Lucas Alviar, et al.* in the United States District Court for the Eastern District of Texas, Lufkin Division. To prepare for this affidavit, I have reviewed the medical records of Phillip Bailey and Plaintiff's Original Complaint. I am familiar with UTMB/CMC policies and procedures with respect to the provision of medical care. I am not receiving any pay, save my usual salary, for review of records or preparation of this report. I have been asked to review the above referred records in order to provide expert medical opinion(s) as to the medical care provided to Phillip Bailey.
> . . .
> **Medical Summary: Phillip Bailey, TDCJ #1619414**
> Mr. Bailey filed this lawsuit under 42 U.S.C. § 1983, alleging the defendants have shown deliberate indifference to his serious medical needs while incarcerated at the Polunsky Unit in the Texas Department of Criminal Justice (TDCJ). UTMB-CMC provides care to approximately 80% of TDCJ units.
> Of the defendants Mr. Bailey named in his complaint the following are UTMB-CMC employees: Dr. Marissa Lanuza (Physician), Dr. Daniel V. Nguyen (Physician) and Mr. John Keller (Practice Manager). In his complaint, Mr. Bailey alleges that after he was

involved in a chain bus accident, defendants ignored his sick call requests, caused him extreme pain and suffering, intentionally delayed treatment or provided inadequate treatment in order to save costs.

**Medical Record Findings and Opinions**
**Dr. Marissa Lanuza**
The first time Dr. Lanuza saw Mr. Bailey in clinic following the chain bus accident that surrounds the claims in the lawsuit was on January 8, 2013. The notes from this clinic visit indicate that Mr. Bailey complained of allegedly not being treated for Hepatitis C and his liver causing him pain. During her examination, Dr. Lanuza noticed that Mr. Bailey was negative for right upper quadrant tenderness in response to deep palpitation and his liver span was within normal limits. During this visit, Dr. Lanuza also observed that Mr. Bailey had acute pharyngitis for which she prescribed appropriate medications. Dr. Lanuza saw Mr. Bailey again in clinic on February 7, 2013. In this visit, he complained that he could not live with the pain in his left leg, back and feet. He further complained that he needed medical boots and Neurontin, and he could not flex his head backward. He also alleged that he was told he needed surgery at Hospital Galveston's Vascular Surgery specialty clinic. It was explained to Mr. Bailey that Neurontin would not do much for alleviating joint pains and he was also told he could not get medical boots because there was no indication of the need from x-rays that were taken. Immediately following this clinic visit, Dr. Lanuza made a referral for Mr. Bailey to be seen in the Vascular Surgery Clinic at Hospital Galveston because of Mr. Bailey having peripheral artery disease. Dr. Lanuza expedited this referral on Mr. Bailey's behalf. Mr. Bailey was seen by Dr. Lanuza once again on February 15, 2013. During this visit, Mr. Bailey complained that he was in pain from the chain bus accident. Dr. Lanuza observed and noted in the chart that Mr. Bailey had chronic musculoskeletal pain and sciatica (pain affecting a large nerve which extends from the lower back down the leg). As a result, Dr. Lanuza had Mr. Bailey receive 40mg of Kenalog, a steroid anti-inflammatory intramuscular injection used to treat such pain. This was the last time Dr. Lanuza saw Mr. Bailey in clinic.

**Dr. Daniel V. Nguyen**
With regards to Dr. Nguyen, Mr. Bailey makes the same allegations as he does against Dr. Lanuza. Additionally, the plaintiff alleges that Dr. Nguyen caused him to lose sight in his right eye because Dr. Nguyen was trying to save costs and subsequently interfered with his

treatment. Lastly, the plaintiff alleges that Dr. Nguyen hindered his treatment by making calls to have it delayed.

On January 8, 2013 Dr. Nguyen was asked to make an expedited referral for Mr. Bailey to return to the Vascular Surgery Specialty Clinic at Hospital Galveston. Due transportation errors, Mr. Bailey missed his surgery scheduled for January 7, 2013 and needed to be re-referred to ensure that he continued to Hospital Galveston as planned. In response to this request, Dr. Nguyen made the referral on the following day, January 9, 2013.

The next time Dr. Nguyen was involved in the care and treatment of Mr. Bailey was on March 29, 2013. Dr. Nguyen saw Mr. Bailey in clinic at the Polunsky Unit as the result of a sick call request. Mr. Bailey complained that he needed to receive the medications prescribed by the Ear Nose and Throat (ENT) provider (Nasonex) and he also wanted to receive chlorpheniramine (antihistamine drug) to treat his minimal rhinitis. As a direct result, Dr. Nguyen started Mr. Bailey on chlorpheniramine 4mg for 5 days.

On April 4, 2013, Dr. Nguyen once again made another specialty clinic referral on behalf of Mr. Bailey. According to the records, Mr. Bailey had a computerized tomography (CT) scan ordered by ENT but he was not present on the date of the appointment. For this reason, Dr. Nguyen placed the referral and had it expedited as Mr. Bailey was allegedly suffering from unspecified hearing loss and chronic sinusitis. Mr. Bailey was seen again by Dr. Nguyen on June 7, 2013. Mr. Bailey placed another sick call request complaining that his medications needed to be renewed, he wanted his blood sugar checked and he also complained that his vision was blurry. In response, Dr. Nguyen renewed the following medications for Mr. Bailey: timolol, and alphagan. Dr. Nguyen conveyed to Mr. Bailey that he had three appointments at Hospital Galveston scheduled - audio, vascular surgery and ophthalmology. Additionally, Dr. Nguyen let Mr. Bailey know an MRI for him had been approved but a definite date had not been set at that point. In his complaint, Mr. Bailey alleges Dr. Nguyen did not want him to undergo an MRI in an effort to save costs. There is no indication of this in the record. As aforementioned, Dr. Nguyen notified Mr. Bailey than an MRI had indeed been approved. Concluding this clinic visit, a finger stick blood sugar check was ordered for Mr. Bailey.

. . .

**Conclusion**

On the day of the chain bus accident, January 4, 2013, Mr. Bailey was seen by nursing and the nursing protocol for musculoskeletal

symptoms was used. During this visit, he was found to be in stable condition and he was prescribed acetaminophen for any pain. Mr. Bailey alleges that his medical complaints had been consistently ignored by providers at his unit of assignment and that he was never seen by medical. The evidence from the medical record shows numerous instances where Mr. Bailey was seen by medical providers at his unit, but referrals were also made for him to be seen by specialty clinic providers at Hospital Galveston.

Mr. Bailey alleges he has lost sight in his right eye due to Dr. Nguyen attempting to save costs but there is no evidence of that in his medical records and more importantly, there is no evidence of him not being able to see out of his right eye. Mr. Bailey does appear to have been diagnosed with glaucoma and pigmentary dispersion syndrome but by no fault of Dr. Nguyen or any of the providers who have treated him. In fact, Dr. Nguyen prescribed eye drops to help alleviate the pressure. Mr. Bailey reported feeling in his eyes and encouraged Mr. Bailey to return to the clinic if his eye condition ever worsened.

Mr. Bailey later had two surgeries at Hospital Galveston - a foraminotomy on February 6, 2014 and a posterior laminectomy on June 3, 2014. In his complaint, Mr. Bailey alleges that after these surgeries, Dr. Nguyen tried to hinder him from receiving further treatment. However, Dr. Nguyen has not seen Mr. Bailey in clinic and has not been involved in his care since November 14, 2013, before the two surgeries.

The medical record demonstrates that Mr. Bailey has been medically examined several times and has undergone diagnostic testing, such as x-rays, all in a professional manner. The defendants not only tended to his medical needs in clinic at his unit of assignment, but referrals were also made for him to receive further treatment at Hospital Galveston, and he was prescribed medications all in an effort to alleviate the pain he claimed he was suffering. Based upon my education, training, and experience as a physician both in the community and correctional settings, I believe that the medical treatment provided to Mr. Bailey was both appropriate and performed within the standard of care. I believe any other reasonably trained medical professional, under the same or similar circumstances and knowing what the defendants knew at that time, would have provided the same treatment and believed that doing so was responsible and done in good faith.

The above opinion is based upon my review of the records noted above and reasonable medical probability. I reserve the right to amend this affidavit should additional information become available.

(Docket Entry No. 35-2, pp. 1-7).

## IV. Standard of Review

A district court must sua sponte dismiss a prisoner's IFP § 1983 complaint if the action is malicious or frivolous, fails to state a claim, or seeks monetary relief from a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B). Under 28 U.S.C. § 1915(e)(2)(B)(i), the court may dismiss an *in forma pauperis* complaint as frivolous when it lacks an arguable basis in law or fact. *Hutchins v. McDaniels*, 512 F.3d 193, 195 (5th Cir. 2007) (citing *Black v. Warren,* 134 F.3d 732, 734 (5th Cir. 1998)). The court may dismiss the claim "before service of process or before the filing of the answer as long as certain safeguards are met." *Brewster v. Dretke,* 587 F.3d 764, 767 (5th Cir. 2009) (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990)). The Fifth Circuit reviews such dismissals for abuse of discretion. *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005).

A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001)(citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998)(quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

## V. The Medical Care Claim

"[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999)(quoting *Estelle v.*

*Gamble,* 429 U.S. 97 (1976)). Under the "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety". *Stewart,* 174 F.3d at 534 (citing *Estelle,* 429 U.S. at 104). While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

In *Estelle,* the Supreme Court concluded:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle,* 429 U.S. at 104-05.

To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy,* 158 F.3d 908, 912 (5th Cir. 1998)(quoting

*Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994)(citing *Farmer,* 511 U.S. at 842 & n.8).

Under the facts alleged by Bailey, this standard is not met. Bailey has not demonstrated that the medical care provided to him posed a substantial risk to his future health. By his own admissions, Bailey was prescribed medications for his pain. Such evidence of examinations and treatment negate Bailey's claim of deliberate indifference. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977).

Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)(citing *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson,* 759 F.2d at 1238. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle,* 429 U.S. at 107. And the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838. Therefore, Bailey's claims should be dismissed as frivolous under 28 U.S.C. § 1915(e)(2).

Bailey also complains that TDCJ-ID medical personnel did not give him the correct medications to alleviate his pain. He states that he suffered from severe neck and back pain for which he received Acetaminophen. He complains that the pharmacist denied him Neurontin.

"Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana*, 122 F.3d 286, 292 (5th Cir. 1997).

As noted, medical records of examinations, diagnoses, and medications rebut Bailey's allegations of deliberate indifference. *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993). Bailey admits that he was seen by medical personnel on several occasions. Medical personnel ordered various diagnostic procedures such as MRI's and electromyography to evaluate his injuries. In 2014, Bailey had surgeries on his neck and back. Bailey has not alleged facts demonstrating that the defendants were aware of, and disregarded, a substantial risk of harm to Bailey. Nor did he suffer substantial harm as a result of not receiving Neurontin.

Finally, Bailey complains of the delay in treating his neck and back injuries. He claims that he was injured in January 2013, but he had to wait five months to be examined by medical personnel.

To establish an Eighth Amendment claim for denial of medical care, the inmate must show deliberate indifference to "serious" medical needs, "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Constitutionally adequate care does not, however, ensure that an inmate will agree with every treatment decision. *Estelle*, 429 U.S. at 107-08.

To succeed on his claims of denial of medical care, Bailey must show (1) deliberate indifference (2) to a serious medical need. Accepting Bailey's claims as true, he had a serious medical need. The question is thus whether he has shown that the defendants were deliberately indifferent to that need. He alleges that medical personnel were deliberately indifferent when they delayed evaluating his neck and back injuries for five months. Bailey has not shown, however, that such delay constituted deliberate indifference.

13

Bailey has not alleged facts demonstrating the defendants were aware of, and disregarded, a substantial risk of harm to Bailey. Nor did he suffer substantial harm as a result of the delay in treatment. Thus, Bailey's claim based on deliberate indifference to his serious medical needs is DISMISSED as frivolous. 28 U.S.C. § 1915(e)(2)(B)(i).

## VI. Conclusion

The action filed by Phillip Bailey (TDCJ-CID Inmate #1619414) lacks an arguable basis in law. His claims are DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i). Bailey's motion for discovery, (Docket Entry No. 34), and motion to strike advisory, (Docket Entry No. 38), are DENIED. Any remaining pending motions are DENIED as moot.

The TDCJ-CID must continue to deduct twenty percent of each deposit made to Bailey's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $350.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

(1) the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

(2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3) the District Clerk for the Eastern District of Texas, Attention: Manager of the

Three-Strikes List, Lori_stover@txed.uscourts.gov.

SIGNED at Houston, Texas, on _____ March 24, 2016.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE